FIRST NATIONAL BANK OF GREENWOOD, MISSISSIPPI, v. PLANTERS NATIONAL BANK OF CLARKSDALE, MISSISSIPPI, et al.

Western Section.   December 8, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

Chandler, Sheppard, Owen & Williams, of Memphis, for appellant.

G. T. and Millsaps Fitzhugh and S. L. Gwin, of Memphis, for petitioner.

SENTER, J.   This cause is now before this court on the motion of defendants, Planters National Bank of Clarksdale, Mississippi, et al., to dismiss the petition heretofore filed in this court by complainant for a supersedeas to supersede an interlocutory decree made by the Chancellor in the cause, dissolving a temporary injunction previously granted, and to have the supersedeas granted by a member of this court, at Chambers, discharged.

The complainant, First National Bank of Greenwood, Mississippi, filed its original bill in this cause on September 15, 1928, alleging in substance, that the defendant, Robert E. Townes, is indebted to the complainant for the principal sum of $54,393.84, evidenced by certain notes, and that said notes are secured by a trust deed exe-

cuted by the said Townes to the Union & Planters Bank & Trust Company, trustee, dated June 2, 1927, and duly recorded in the register's office of Shelby county, Tennessee, and by which trust deed several parcels of real estate, are conveyed, or rather the one-sixth undivided interest of said Townes is conveyed, to said Union & Planters Bank & Trust Company, as trustee, each several parcel being described.

The bill further alleges that said trust deed executed on June 2, 1927, secured the same notes and the same indebtedness and on the same property, and interest in the same property that a trust deed executed on February 20, 1926, secured, and new notes taken and a new trust deed taken on June 2, 1927, but that said trust deed of February 20, 1926, and the notes secured thereby had not been satisfied or paid when the notes were renewed and a new trust deed taken.

The bill further alleges that, at the time complainant took the trust deed to secure the indebtedness in 1926, and at the time the same was renewed in 1927, there were certain prior trust deeds on the property, and prior encumbrances, and that these trust deeds were to C. G. Snyder, trustee, and to Sam C. Cook, Jr., trustee, and that both said trust deeds were defectively executed, and were dated, respectively, February 18, 1922, and March 24, 1923.

The bill further alleges that on June 7, 1928, Robert E. Townes was induced and persuaded by defendant, Planters National Bank of Clarksdale, the holder of the indebtedness secured by the two alleged defective trust deeds, one to Snyder as trustee, and the other to Cook as trustee, to execute a new trust deed covering on the same property.

It is alleged that additional indebtedness was secured by the new trust deed increasing the encumbrance on the property; that the debt secured by the Snyder trust deed included the indebtedness secured by the Cook trust deed; that there was fraud and collusion between Townes and the defendant bank in the execution of the trust deed of June 7, 1928, as to the amounts owing to the defendant bank, and also in including additional indebtedness. The bill alleged that it was entitled to priority, and alleged fraud and collusion. In the alternative, the bill alleges that if complainant was not entitled to priority under its trust deed, that it was entitled to have an accounting and to have the amount actually secured by the trust deed in favor of the defendant bank ascertained, and the amount of any new indebtedness secured by said trust deed ascertained.

The bill further alleges that the trustee, the defendant Dietler, had advertised and was about to sell the property under the trust deed of June 7, 1928, and apply the proceeds to the satisfaction of

the indebtedness alleged to be secured by said trust deed; and alleging that great and irreparable injury and damages would result to complainant if said trust deed was foreclosed and the property sold by Dietler, the trustee.

The bill prayed for an injunction restraining the defendants from selling the property under the trust deed, and prayed for an accounting to the end that the actual and proper indebtedness secured by said trust deed be determined under the orders of the court.

A temporary injunction was granted. The defendants filed an answer supported by certain ex parte affidavits, and moved the dissolution of the temporary injunction.

The motion to dissolve was heard by the Chancellor upon the original bill and certain ex parte affidavits filed by complainant in support thereof, and upon the answer and the ex parte affidavits filed by the defendants, and the exhibits. The answer met the allegations of the bill. Upon the hearing the Chancellor sustained the motion of defendants, and decreed a dissolution of the temporary injunction, but in this interlocutory decree, it was further ordered by the Chancellor that the trustee upon a sale of the property under the trust deed, would deposit in the Union & Planters Bank & Trust Company, of the proceeds of the sale, the amount of the indebtedness claimed by the defendant bank, the same to be subject to the further orders of the court in the cause.

The decree recites as follows:

"It is therefore ordered, adjudged and decreed that the motion of defendants to dissolve be, and it is hereby granted, and that the injunction heretofore entered in this cause on this day restraining the said E. N. Dietler, trustee, from foreclosing the aforesaid deed of trust, is hereby dissolved and for naught held.

"It is further ordered, adjudged and decreed that the said E. N. Dietler, trustee, deliver to the Union & Planters Bank & Trust Company, of Memphis, Tennessee, as trustee, the proceeds from the sale of the property described in and secured by said deed of trust to the amount of the claim of the Planters National Bank of Clarksdale, as shown by its answers filed in this cause, and the said Union & Planters Bank & Trust Company shall hold said funds subject to the further orders of this court, and the said E. N. Dietler, trustee, shall then pay the balance of the proceeds of said sale, if any, to the amount of this claim to the First National Bank of Greenwood."

"To the action of the court herein, complainant here and now excepts."

Whereupon, the complainant filed its petition, and presented same to the Honorable F. H. Heiskell, a member of this court, for

a supersedeas, to supersede the action and interlocutory decree of the Chancellor in dissolving the temporary injunction, which writ of supersedeas was granted upon condition that complainant enter into a supersedeas bond in the sum of $2500.

The question made on this motion to dismiss the petition of supersedeas and discharge the supersedeas writ granted, goes directly to the right and jurisdiction of this court to grant a supersedeas, or to supersede an interlocutory decree of the chancery court under the facts and circumstances of this case. In support of this motion it is urged by the defendant that the order of supersedeas made by a member of this court was improperly granted, because:

"1. Said order or writ seeks to supersede an interlocutory decree of the chancery court, which said decree does not adjudicate the right of the parties, nor trench upon final relief, but is purely negative in character and not the subject of active enforcement, but seeks merely to preserve the status quo of the parties before any order whatever was made.

"2. The granting of said petition and order of supersedeas is in effect the granting of an injunction by this Honorable Court, which has been previously granted and dissolved by the said chancery court, and as such is not within the powers of this Honorable Court under the statutes of Tennessee.

"3. The order of supersedeas seeks to review and supervise alleged errors of the chancery court in dissolving an interlocutory injunction or restraining order, and it is not within the powers of this court to supervise or review the conceded powers of discretion of an inferior court by such a writ.

"4. The Code of Tennessee in defining and granting to the Supreme Court and this Honorable Court the power to grant a supersedeas to certain interlocutory decrees, does not apply to such an interlocutory order as is sought to be here superseded, in that said order merely preserves the status quo of the parties before any order was made, and is not such an order the active enforcement of which may be superseded.

"5. Sections 3933 and 4513, setting out the powers of this court to grant supersedeas to certain interlocutory decrees, is inapplicable to an order dissolving an injunction previously granted inhibiting the sale of land.

"6. The petition for supersedeas has no equity on its face and seeks indirectly through the office of the supersedeas writ to obtain an injunction which the inferior court in its discretion refuses, and in effect merely seeks to review the discretion of said Chancellor in dissolving said injunction."

These several propositions need not be separately considered and discussed in disposing of the motion before this court. After all there is but one question for determination, and that is whether this court has the power to supersede the particular interlocutory decree in this cause.

This question was ably argued by the attorneys for the respective parties before the bar of this court, and we have been furnished with excellent briefs by the respective parties, in support of their respective contentions.

In the case of Blake v. Dodge, 76 Tenn., 464, Code Section 3933 (Shannon's Ann. Code, 5737) is construed, and wherein it is said by the court:

"These provisions clearly do not contemplate the bringing up to this court by the supersedeas of the cause in which the order was made, or any part of it, for immediate revision. And it has, consequently, been held that the writ does not operate as an appeal or writ of error. (McMinnville, etc., R. R. Co. v. Huggins, 7 Cold., 217). The object of these provisions was to enable the court, or one of its judges, to stay the execution of an order or decree of the chancery court, which, in advance of the final hearing, undertakes to deprive the litigant of money or property. And the reason of the legislation was, that under our system of jurisprudence an appeal lies of right from every final decree, and that the remedy would be of no avail if the court undertook to do by interlocutory order what ought only to be done by the final decree. The orders and decrees intended to be embraced in the statute were only such as are of a nature to be actively enforced against the rights of property of the litigant, not those intended to impound or protect. Upon an application for the writ, the question is not whether the order or decree was erroneous, for to proceed on that ground would be to revise the action of the Chancellor, as upon an appeal or writ of error, but is it within the meaning of the statute? In this view, if the supersedeas be granted by a judge in vacation, all that the court can do, upon the motion to discharge the supersedeas is to see that the order superseded was of the character contemplated by the statute. . . ."

The above construction of our statutes on the subject has been generally followed in subsequent cases. (Troughber v. Aiken, 109 Tenn., 451; McMinnville & Manchester R. R. Co. v. Huggins, 7 Cold., 217; Mabrey v. Ross, 1 Heisk., 770; Cone v. Paute, 12 Heisk., 506; Raht v. Mining Co., 2 Shan. Cas., 8; Paine v. Johnson, 2 Shan. Cas., 354; Foley v. Leith, 3 Shan. Cas., 354; Watkins v. Bank, 3 Shan.

Cas., 564; Park v. Meek, 1 Lea, 78; Baird v. Turnpike Co., 1 Lea, 394, and other cases.)

In Mayberry v. Ross, 1 Heisk., 770, which was upon an application to supersede the dissolution of an injunction, the court said:

"The writ of supersedeas is technically a writ to suspend the execution of a judgment. There must be something in the course of execution, to suspend which the writ is awarded—something in fieri, but not yet finished. Its common-law function is to stop the execution of a judgment at law, or a decree in equity, whether interlocutory or final and whether for money or other property, or whether the said execution be for the performance of any other act under the mandate of the court. There must be some affirmative act to be done, to prevent the doing of which the writ is awarded. Its issuance imports that something is about to be done which would be illegal and injurious to the parties complaining, and the doing of that act is to be suspended until its justness and legality can be inquired of by the court. . . ."

It would appear that the final test is whether the decree sought to be superseded trenches upon final relief sought by the complainant, and is of a nature to be actively enforced.

In Howell v. Thompson, 130 Tenn., 318, our statutes on this subject are construed, and the cases collated and discussed. In that case it is said, after referring to the numerous cases:

"In all the cases cited above, where there was an application to supersede an interlocutory injunction or the dissolution of an interlocutory injunction, the writ was disallowed, except in Keesee v. Board of Education, 6 Cold., 127, and in Williams v. Boughner, 6 Cold., 486. As we have seen, these cases did not consider the jurisdiction of this court in these matters, but the jurisdiction was assumed.

"We are forced to hold, under our practice, settled by this long line of authorities that the interlocutory injunctions granted by the Chancellor against the defendant in these cases cannot be superseded by our writ of supersedeas. These injunctions are unmistakably interlocutory and only undertake to restrain the defendant from proceeding elsewhere than in these causes, pending the further orders of the court. . . ."

The contention is made for the complainant bank that the facts of the instant case come within the rule of Paine v. Johnson, 2 Shan. Cas., 542. In that case there had been a dissolution of a temporary injunction previously granted restraining the sale of certain property under a trust deed. The supersedeas which was discharged in that case, superseding the order dissolving the injunction, was limited to certain property claimed to be exempt by law from

execution and sale. After reviewing the facts it was said by the court in that case:

"We are satisfied, upon an examination of the record, to let the order for supersedeas stand. One of the questions in issue between the parties is, whether certain specific articles of personal property, exempt by law from execution, were included in a mortgage made by petitioner in May, 1870, to defendant; and if so, whether petitioner has not the right, before the sale of said property under the mortgage, to withdraw his consent to this appropriation and to claim them under the law for the benefit of his family? The Chancellor held, in opposition to the spirit and tenor of the case of Denny v. White, 2 Cold., 283, that the exempt property included in the mortgage was subject to sale; and upon dissolving the injunction, ordered the same to be sold.

"We do not, in this application, decide whether the case of Denny v. White is good law or not; but we hold that until that case shall be reviewed and reversed by this court, it was error in the court below to disregard it, and order a sale of exempted property. Especially, as there were other questions involved in the case, upon the final determination of which, it may turn out, as alleged by petitioner, that the debts provided for in this mortgage may be satisfied without resorting to the exempt property. Upon both grounds, the supersedeas suspending the sale of the exempted property until a final hearing, was ordered, and the order will stand as already made."

It is to be observed that in Paine v. Johnson, the dissolution of the temporary injunction so as to permit the sale of the alleged exempt property, was a substantial denial of the relief sought in that case, since it was claimed in the pleadings and it was one of the issues to be determined on a final hearing that this alleged exempt property was not included in the mortgage, and also that it was unnecessary to sell this exempt property to satisfy the indebtedness secured. These were issues to be determined upon a trial and for final determination, and to have permitted the sale until these issues were first determined, would have been a full denial of the relief sought by the complainant.

Complainant bank contends that the principle applied in Downing v. Dunlap Coal Co., 93 Tenn., 234, supports its contention in this case.

In Downing v. Dunlap Coal Co., it was held that a supersedeas was properly granted by a judge of the Supreme Court to stay an interlocutory order of the chancery court, which order was granted alone upon the bill, answer and ex parte affidavit, placing a solvent corporation in the hands of a receiver pending a suit by the minor-

ity stockholders seeking to wind up the affairs of the corporation. In that case it was said by the court:

"In the attitude of the parties, and in view of the issues between them, much of the law suit was settled by appointment of a receiver. It was practically settled that complainants, subscription and payment for stock was valid (though in issue), and that they were entitled to call the corporation to settlement. It was said that readjustment between themselves was not to be permitted, or ought not at least until defendant should collect all its stock.

"But, added to the fact of appointment, the Chancellor adjudicates that the stock is due, and directs its collection. This (it must not be forgotten), not at the instance of creditors, but between stockholders themselves, fighting each other upon an issue that there was to be a reduction and readjustment, made in advance of the settlement of that issue, and of the taking of any evidence upon it, made on motion heard on affidavits."

The court then proceeds to state:

"There is no question that the decree would have been a proper one on a hearing upon the merits, had the issues been found in favor of complainants; but it was not competent for the Chancellor to make it in advance on motion. The complainants were already protected by injunction. Defendant was restrained from selling its property, and creditors were restrained from doing so. The question left then at issue was as to collections and payment of debts, or compromised and readjustment alleged to have been agreed upon. The Chancellor decided that issue by deciding the stock is now due and ordering a collection."

Other questions were made in that case unnecessary to discuss. It is clear from the statement contained in the opinion, that by this interlocutory decree made in the cause before a determination of the issues on a trial on the merits, and by appointing the receiver, operated as a determination of the contested and litigated issues involved, and was a denial of the relief sought upon final hearing.

In the case of City of Chattanooga, v. State of Georgia, 3 Tenn. App. Rep., 42, cited and relied upon by complainant in this case, a section of this court refused to discharge an order superseding the interlocutory decree. In that case the City of Chattanooga sought to take certain railroad property for street purposes by condemnation proceedings. The owner of the fee sought to defeat the condemnation on the ground it was already devoted to public use. The lower court, after granting a temporary injunction restraining the city from taking possession pending an appeal, set this order aside and permitted the city to take possession. It was held that

the owner of the fee was entitled to a supersedeas in order that it may not lose possession of the property until the issues were finally determined, holding that the possession was a valuable right. The court said:

> "If the loss of possession means the loss of right then the taking of possession by the city under the authority of its ordinances pending a hearing of the matters in controversy is a denial of due process of law which contemplates a hearing before judgment and judgment before execution."

In that case it was held that the interlocutory decree undertook and did settle issues in advance of the trial of the case, and that the aggrieved party was entitled to have a supersedeas to the end that the issues be first determined upon the final hearing, before being deprived of a right claimed and contended for under the issues, there being a bona fide contention made.

Numerous other cases and authorities bearing more or less upon the subject and questions involved have been cited in support of the contention of the complainant bank, but when these cases are analyzed and the supersedeas sustained, it appears that the interlocutory decree sought to be superseded pre-determines litigated issues, or operates as a denial of the final relief sought.

In the case before us, the interlocutory decree dissolves the temporary injunction, and permits a sale of the property by the defendant under the trust deed. If this decree went no further and stopped at that point it would present a different question. But the decree specifically provides that the trustee in the trust deed shall place the proceeds in the Union & Planters Bank & Trust Company, as trustee, to the amount of the indebtedness claimed by the defendants to be secured by the trust deed as alleged in their answer, and the same to be subject to the further orders of the court. The balance of the proceeds to be paid to complainant on its debt secured by its trust deed. By this decree there is no determination of the issues involved. The bill alleges that the amount claimed by the defendant bank includes indebtedness accruing subsequent to complainant's trust deed, and also claims that complainant is entitled to priority. The defendant bank denies these allegations. Complainant's bill alleges fraud and collusion between the debtor and the defendant bank, and the answer denies these allegations. The complainant, by its bill, seeks an accounting to the end that it may be ascertained the amount of debts actually secured by defendant's trust deed, which would be entitled to priority over complainant's debt. These are the issues of fact presented by the pleadings. Neither of these issues is determined by the interlocutory decree dissolving the injunction. They remain to be tried and determined, and the control of the proceeds of the sale of the

96

property remain with the Chancellor, and are subject to the further orders of the court when the issues are tried and determined. In this situation it cannot be said that any of the material issues have been adjudicated by the interlocutory decree sought to be superseded. Nor can it be said that the com'plainant bank, by this interlocutory decree, suffers a denial of the relief sought.

Upon the trial of the case on the merits the issues are to be determined, and the respective rights of the parties adjudicated. These matters remain to be disposed of upon the hearing of the cause in the chancery court on the merits and issues presented by the pleadings, and the interlocutory decree directing that the trustee under the trust deed shall place in the U'nion & Planters Bank & Trust Company, as trustee, and subject to the further orders of the Chancellor, the amount of the indebtedness claimed by the defendant, fully protects any and all rights of the complainant bank in the proceeds derived from the sale of the property.

We are, therefore, of the opinion that the petition for supersedeas, should be dismissed, and the order of supersedeas heretofore granted should be discharged. Complainant bank and surety on the supersedeas bond will pay the cost accruing in this court in the matter of the petition for supersedeas.

Owen and Heiskell, JJ., concur.